**THOMPSON COBURN LLP**
**ARTHUR F. SILBERGELD, CSB 81093**
**asilbergeld@thompsoncoburn.com**
**GEOFFREY L. WARNER, CSB 305647**
**gwarner@thompsoncoburn.com**
**KEITH R. RASHER, CSB 299022**
**krasher@thompsoncoburn.com**
**2029 Century Park East, Suite 1900**
**Los Angeles, California 90067**
**Tel: 310.282.2500 / Fax: 310.282.2501**

Attorneys for Defendant
CHARTER COMMUNICATIONS, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEVENAN MAHARAJ, individually and on behalf of all similarly situated employees and aggrieved of Defendants in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.,; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. '20CV0064 JLS AHG<br><br>**DEFENDANT CHARTER COMMUNICATIONS, INC.'S NOTICE TO FEDERAL COURT OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint filed: November 5, 2019 |

**TO THE CLERK OF THE ABOVE ENTITLED COURT, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Charter Communications, Inc. ("Charter"), contemporaneously with the filing of this Notice, hereby removes *Devenan Maharaj v. Charter Communications, Inc., and Does 1 through 50,* Case No. 37-2019-00058788-CU-OE,CTL, an action from the Superior Court in the State of California for the County of San Diego ("State Court Action"), to the United States District Court for the Southern District of California. Charter removes the State Court Action under 28 U.S.C. §§ 1332 and 1441, on the factual and legal grounds discussed below.

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. This case meets all of CAFA's requirements for removal and is timely and properly removed by filing this Notice of Removal.

2. Because the Doe defendants have not yet been served, they need not join or consent to Charter's Notice of Removal. *Salveson v. Western States Banckcard Ass'n*, 731 F.3d 1426, 1429 (9th Cir. 1984) (named defendants not yet served in state court action need not join the notice of removal). CAFA permits any defendant to unilaterally remove the action absent the consent of all defendants if the requirements of CAFA for removal are met, as they are here. 28 U.S.C. § 1453(b) (CAFA action may be removed "by any defendant without the consent of all defendants."); *see also United Steel, et al. v. Shell Oil Co.*, 549 F.3d 1204, 1208-1209 (9th Cir. 2008) (holding

that 28 U.S.C. § 1453's language clarifies that a class action may be removed "by any defendant without the consent of all defendants"); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1196 (11th Cir. 2007); (holding that other defendants cannot prevent or defeat removal of entire action); *In re Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 849, 853 (6th Cir. 2012) (same).

## II. VENUE

3. Removal to the U.S. District Court for the Southern District of California is proper because this district embraces the Superior Court of the County of San Diego, the place where this action was originally filed. *See* 28 U.S.C. §§ 1446(a).

## III. PLEADINGS, PROCESS, AND ORDERS

4. On or about November 5, 2019, Plaintiff Devanan Maharaj ("Maharaj") filed the above-captioned action in the Superior Court of the State of California for the County of San Diego, entitled *Devenan Maharaj v. Charter Communications, Inc.; and Does 1 through 50,* and assigned Case No. 37-2019-00058788-CU-OE-CTL ("Complaint").

5. The Complaint asserts the following causes of action against Charter: (a) Failure to Provide Meal Periods; (b) Failure to Provide Rest Periods; (c) Failure to Pay Minimum and Regular Wages; (d) Failure to Pay All Overtime Wages; (e) Failure to Pay Reporting Time Pay; (f) Failure to Provide Accurate Itemized Wage Statements; (g) Failure to Pay All Wages Due Upon Separation of Employment; and (h) Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*). The allegations in the Complaint are incorporated into this notice by reference without admitting the truth of any of them.

6. On December 9, 2019, Plaintiff served Charter with a copy of the Summons and Complaint. Copies of all process, pleadings and orders served upon Charter are attached hereto as **Exhibit A**, pursuant to 28 U.S.C. § 1446(a), and incorporated herein. Declaration of Geoffrey L. Warner ("Warner Decl."), ¶ 2.

7. Charter filed an Answer in San Diego County Superior Court on January 8, 2020. Attached hereto as **Exhibit B** is a true and correct copy of the Charter's Answer filed in the San Diego Superior Court. Warner Decl., ¶ 3.

8. To Charter's knowledge, no further process, pleadings, or orders related to this case have been filed in the San Diego Superior Court or served by any party other than as described above. To Charter's knowledge, no proceedings related hereto have been heard in the San Diego County Superior Court.

## IV. TIMELINESS OF REMOVAL

9. An action may be removed from state court by filing a notice of removal – with a copy of all process, pleadings, and orders served on the defendant – within thirty days of defendant receiving the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the thirty-day removal period runs from the service of the summons and complaint). Because Plaintiff served the Summons and Complaint on Charter's agent for service of process on December 9, 2019, the thirty-day removal period deadline falls on Wednesday, January 8, 2020.

10. Accordingly, removal is timely because this Notice of Removal has been filed within thirty (30) days of Charter's receipt of the initial pleading setting forth the claim for relief upon which the Action is based. *See* 28 U.S.C. § 1446(b). As referenced above, this Notice of Removal also contains all process, pleadings and orders served on Charter.

## V. CAFA JURISDICTION

11. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

This case meets each CAFA requirement for removal, and is timely and properly removed by filing this Notice.

**A. The Proposed Class Contains At Least 100 Members**

12. Plaintiff seeks to represent a class consisting of all current and former non-exempt employees of Charter, employed as Maintenance Technicians in the state of California, during any pay period at any time from November 5, 2015, through to present (the "Maintenance Technician Class"). (Complaint, ¶ 58). Plaintiff also seeks to represent a subclass comprising all members of the Maintenance Technician Class, whose employment with Charter ended at any time from November 5, 2016, through the present (the "Waiting Time Penalties Subclass"). (Complaint, ¶ 59).

13. 28 U.S.C. § 1332(d)(5)(B) sets forth that CAFA does not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." The threshold requirement is easily met in this case.

14. A review of Charter's records by a human resources employee with personal knowledge of Charter's record keeping practices establishes that there was (at all times) over 100 non-exempt[1] employees employed as Maintenance Technicians in California ("putative class members") between November 5, 2015 (four years before the filing of the Complaint) and the date of this removal. (Declaration of Valerie Chandler ("Chandler Decl."), ¶ 6).

**B. Charter is Not A Governmental Entity**

15. Under 28 U.S.C. §1332(d)(5)(B), the CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

[1] The information presented herein is based upon a review of those records reasonably available to Charter at the time of filing this Notice of Removal. Nothing contained herein shall be deemed a waiver of Charter's right to challenge each and every putative class members' purported status as a non-exempt employee under California law. Nor should any assertion contained herein constitute a binding judicial admission upon Charter.

16. Charter is a private business entity, not state, state official, or other government entity exempt from the CAFA. (*See* Chandler Decl., ¶ 2).

**C. <u>There is Diversity Between At Least One Class Member and One Defendant</u>**

17. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(a) (emphasis added); *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) (citing 28 U.S.C. § 1332(d)(2)(A)). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *See Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both when the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Charter are citizens of different states.

18. For diversity purposes, a person is "citizen" of the state in which he is domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain). Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Overholt v. Airista Flow Inc.*, No. 17cv1337-MMA (AGS), 2018 WL 355231, at *4 (S.D. Cal. Jan. 10, 2018) (citations omitted).

19. Here, Plaintiff alleges he is a resident of the State of California. (Complaint, ¶ 9.) Further, Plaintiff's personnel records indicate that he resided in the City of Chula Vista, County of San Diego, during his employment with Charter. (*See*

Chandler Decl., ¶ 5). Therefore, Charter has established by a preponderance of the evidence that Plaintiff resides in California, and therefore is a citizen of California.

20. Charter is now, and was when the Complaint was filed, a citizen of a state other than the State of California within the meaning of 28 U.S.C. § 1332(c)(1) because Charter is now, and was when the Complaint was filed, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Connecticut. (*See* Chandler Decl., ¶¶ 2-4). The majority of Charter's high-level executive and administrative functions are performed in the State of Connecticut. (*See id.*)

21. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

22. The named Plaintiff is a citizen of a state different from Defendant, and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**D. The Amount in Controversy Exceeds $5,000,000**[2]

23. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all putative class members exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

24. The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). In *Dart Cherokee Basin Operating Co. v. Owens*,

[2] The alleged damages calculations contained herein are for purposes of removal only. Defendant expressly denies that Plaintiff or the putative class is entitled to any relief whatsoever, and Defendant expressly reserves the right to challenge Plaintiff's alleged damages in this case.

135 S. Ct. 547, 554 (2014) [hereinafter, "*Dart*"], the Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a ***plausible allegation*** that the amount in controversy exceeds the jurisdictional threshold." (Emphasis added). Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *See id.* at 554. "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 553.

25. Charter denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum of $5,000,000. To determine whether the amount in controversy has been satisfied, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are still free to challenge the actual amount of damages in subsequent proceedings and at trial" because they are only estimating the amount in controversy).

26. Here, Plaintiff does not allege the amount in controversy in the Complaint. In the Prayer for Relief, Plaintiff seeks general damages, special damages, compensatory damages for unpaid straight time and overtime wages, rest period premiums, meal period premiums, penalties for alleged failure to comply with itemized wage statements, and waiting time penalties. (Complaint, Prayer for Relief, pp. 35-37). Plaintiff also seeks attorneys' fees and injunctive relief. (*Id.*).

27. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds or removal." 28 U.S.C. § 1446(a). When, as here, the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. Charter's notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S.Ct at 554 (emphasis added).

28. While Plaintiff does not allege the amount in controversy in the Complaint, the face of the Complaint clearly demonstrates that the amount in controversy exceeds $5,000,000.

29. Further, Plaintiff alleges a cause of action for violating the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, et seq. (Complaint, ¶¶ 142-150). Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years from the date of filing of the Complaint, or back to November 5, 2015. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

**a. <u>Failure to Provide Meal Periods</u>**

30. Plaintiff alleges that Charter failed to provide Plaintiff and the putative class members compliant meal periods and failed to pay the full meal period premiums due in violation of California Labor Code §§ 226.7, 512, at 1198. (Complaint, ¶¶ 77-90).

31.    Under California Labor Code § 226.7, employers are to pay employees one (1) hour of pay at the employee's regular rate of pay for each work day that the meal period is not provided. The statutory period for Labor Code § 226.7 penalties is three years.

32.    Plaintiff does not allege that the practice is occasional. Instead, he alleges that "Defendants have a pattern and practice of not providing Plaintiff and the Maintenance Technician Class with legally complaint 30-minute off-duty meal periods during their shifts" such that "the Maintenance Technician Class are unable to take complaint meal periods as a result of Defendant's policies." (Complaint, ¶¶ 78-79).  Specifically, Plaintiff further alleges generally that Defendant "did not provide Plaintiff . . . [and] other similarly situated and/or aggrieved employees the opportunity to take compliant 30-minute, off duty meal periods[,]" without limitation. (Complaint, ¶ 26). Thus, it is reasonable to assume that Plaintiff's allegations suggest that Charter never provided compliant meal breaks.

33.    There were at least 400 non-exempt employees who worked for Charter during the three years prior to the filing of this Complaint, or since November 5, 2016, and they worked approximately 165 work weeks. (*See* Chandler Decl., ¶ 7). The weighted average hourly rate for the non-exempt employees during this three year period exceeded $27.00[3] per hour. (*See* Chandler Decl., ¶ 7)

34.    Because Charter's non-exempt employees in California typically worked 49 out of 52 weeks per year (94.23%) during the putative class period, the putative class worked approximately 155 work weeks (165 work weeks x 94.23%). And they typically worked five days per week. (*See* Chandler Decl., ¶ 11).

---

[3] The $27.00 per hour average rate of pay was calculated by weighing the most recent hourly rates of pay for the non-exempt employees known to Charter at the time of filing of this Removal. To the extent the rates of pay might have changed at any point during the statutory period, the differences would not significantly impact the amount in controversy Charter has set forth to establish jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

35. Based on Plaintiff's allegations that Charter's non-exempt employees were not able to take meal breaks, and thus were allegedly not provided compliant, uninterrupted meal periods five (5) times per week. Even assuming, Plaintiff and the putative class missed only one meal period per workweek, the amount in controversy is $1,674,000.00 (155 work weeks x 1 missed meal periods x $27 per hour x 400 employees).

36. Although Charter vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff were to prevail on his meal period claim with respect to himself and the putative class members, the amount in controversy with respect to that claim alone could be **$1,675,000.00**.

**b. Failure to Provide Rest Periods**

37. Plaintiff makes similar allegations regarding rest breaks. Plaintiff alleges that Charter failed to authorize and/or permit rest period time based upon the total hours worked daily at the rate of ten (10) minute net rest time per four (4) hours or major fraction thereof, in compliance with California Labor Code § 226.7 and the applicable section of the IWC Wage Order. (Complaint, ¶¶ 91-101). The statutory period for Labor Code § 226.7 penalties is three years.

38. Plaintiff specifically alleges that "Maintenance Technician Class members are not authorized and permitted [by Charter] to take compliant rest period because they were regularly required to remain on-duty at all times to complete tasks or monitor and answer their work phones and respond to calls from supervisors and/or customers." (Complaint, ¶ 96). Plaintiff claims Charter has a "common policy, pattern, and practice of failing to compensate Plaintiff and the Maintenance Technician Class with an hour of pay at their regular rate of pay for the times that Plaintiff and the Maintenance Technician Class were not authorized to take rest periods of at least 10 minutes for each four-hour work period, or major fraction thereof." (Complaint, ¶ 99).

39. Because the penalty for missed rest periods is one hour of wages just like for meal periods, and because Plaintiff similarly alleges Charter's consistent denial of rest periods, the amount in controversy is identical to the amount in controversy for the missed meal period claim. Assuming Plaintiff and the putative class missed only one rest period per week, the amount in controversy is **<u>$1,675,000.00</u>** (155 work weeks x 1 missed meal periods x $27.00 per hour x 400 employees).

40. Although Charter vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff prevailed on his rest period claim with respect to himself and the putative class members, the amount in controversy with respect to that claim alone could be **<u>$1,675,000.00</u>**.

**c. <u>Failure To Pay Minimum and Regular Wages</u>**

41. Plaintiff and the putative class seek allegedly unpaid wages under California Labor Code §§1194, 1197, and 1198. (Complaint, ¶¶ 102-111). Plaintiff alleges that Charter "failed to pay Plaintiff and . . . Maintenance Class members at least minimum wages for all the time spent working and under the control of Defendants." (Complaint, ¶ 107).

42. In particular, Plaintiff alleges "Maintenance Technician Class members regularly remained on-duty during their 30-minute meal periods and were not compensated minimum wages for this time." (Complaint, ¶ 107).

43. To determine the monetary amount in controversy for Plaintiff's straight time claim, the total number of hours worked unpaid by Plaintiff and the putative class is multiplied by their regular rate of pay in effect during the time the straight time was allegedly worked.

44. As stated above, between November 5, 2015 and the date of this removal, approximately 400 putative class members worked for Charter in California for a total of 217 work weeks. (See Chandler Decl., ¶ 6).

45. The weighted average hourly rate for those non-exempt employees between November 5, 2015 and the date of this removal exceeded $27.00 per hour,

determined by each putative class member's wage rate and days worked. (See Chandler Decl., ¶ 6).

46. Charter's non-exempt employees in California typically worked 49 out of 52 weeks per year (94.23%). (*See* Chandler Decl., ¶ 10). Accordingly, there were approximately 204 workweeks (217 x 94.23%) when Charter's non-exempt employees in California were working.

47. Charter's non-exempt employees in California typically worked five (5) days per week, and eight hours per day, between November 5, 2015 and the date of this removal. (*See* Chandler Decl., ¶ 11). Accordingly, there were approximately 408,000 work days (204 work weeks x 5 days per work week x 400 employees) between November 5, 2015 and the date of this removal.

48. Assuming, as Plaintiff alleges, that each putative class member was not compensated for a thirty-minute meal period each day worked at a rate of $27.00 per hour, the total Plaintiff seeks for uncompensated straight time for alleged work through meal periods is $5,508,000 (408,000 work days x $27.00/hourly rate x 0.5 (30 minutes).

49. Additionally Plaintiff separately alleges that and that the "Maintenance Technician Class members were required to monitor their phones and respond to phone calls from supervisors and/or customers regarding work-related issues." (Complaint, ¶ 107). Plaintiff alleges that he was not paid for all minimum, regular, and overtime hours wages owed, due to having to remain on-duty at all times. (Complaint, ¶ 35). Plaintiff also alleges Plaintiff and the putative class were not paid for the time they spent being called into work and beginning to travel to an assignment, if an assignment was cancelled (Complaint, ¶ 37), and they were required to monitor and answer their work phones or radios and respond to calls from supervisors and/or customers at all times. (Complaint, ¶ 27). Thus, Plaintiff alleges he and the putative class worked "off the clock."

50. Assuming Plaintiff and the putative class were not compensated for a total of one hour of off the clock work each work week, the total Plaintiff and the putative class seek for uncompensated off the clock time, or "time shaving," is $2,203,200.00 (204 work weeks x $27.00/hour rate x 1 hour).

42. Although Charter vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff prevailed on his straight time claim with respect to himself and the putative class members, the amount in controversy with respect to that claim alone, based on the two separate allegations described above, could be **$7,711,200.**

**d. Failure to Pay All Overtime Wages**

43. Plaintiff alleges that Plaintiff and the putative class members were not paid overtime wages for all hours worked over eight (8) hours in a day and when employees worked over forty (40) hours in a work week. (Complaint, ¶¶ 117-123).

44. To determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of hours worked unpaid by Plaintiff and the putative class that would have been considered overtime hours is multiplied by one and one-half times their regular rates of pay in effect during the time the overtime was allegedly worked. Using the same data set forth above, (204 workweeks and an average hourly rate of $27.00 per hour between November 5, 2015 and the date of this removal), and assuming only a single hour of overtime for each employee each week, the total amount in controversy associated with Plaintiff's overtime claim is $3,304,800 (204 work weeks x 400 employees x 1 overtime hour x $40.50/hour [$27.00 x 1.5 per hour overtime premium]).

45. Although Charter vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff prevailed on his overtime claim with respect to himself and the putative class members, the amount in controversy with respect to that claim alone could be **$3,304,800**.

**e. Failure to Provide Accurate Wage Statements**

46. Plaintiff's alleges that the Charter knowingly and intentionally failed to comply with itemized employee wage statement requirements under California Labor Code §§ 226, 246, and 1198. (Complaint, ¶¶130-139).

47. Labor Code § 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Lab. Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. §340.

48. Presumably, this claim is derivative of Plaintiff other claims and thus, Plaintiff is alleging that each and every statement was inaccurate. Charter paid its California non-exempt employees bi-weekly. Thus, if Plaintiff were to prevail on this claim, the penalty for any employee who worked for the entire period would necessarily be the full $2550.

49. There were a total of 400 non-exempt employees in California from November 5, 2018 to the present for the whole period in question. (*See* Chandler Decl., ¶ 8). Thus, the amount in controversy associated with this claim is at least **$1,020,000** ($2550 x 400 employees).

**f. Failure to Timely Pay All Wages Due Upon Separate of Employment**

50. Plaintiff alleges the Charter failed to timely pay him and the putative class members all wages owed at the time of separation of employment in violation of California Labor Code §§ 201-203. (Complaint, ¶¶ 140-146).

51. Labor Code §§ 201-203 provide that if an employer willfully fails to pay wages owed, then the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid for a maximum of thirty (30) days.

52. Plaintiff claims that Charter failed to pay him and the Waiting Time Penalty Subclass members all wages owed to them within seventy-two (72) hours of their leaving Charter's employ. (*See generally* Complaint, ¶ 140-146).

53. The statute of limitations for a wage action is three (3) years. Here, approximately 60 Waiting Time Penalty Subclass members ceased employment with Charter within the three-year statute of limitations. (*See* Chandler Decl., ¶ 9). The weighted average hourly rate for non-exempt employees who ceased employment with Charter since November 5, 2016 was approximately $32.59/hr.[4] And those employees typically worked at least eight (8) hours per day. (See Chandler Decl., ¶¶ 9,11).

54. This claim appears to be derivative of Plaintiff's other claims. According, Plaintiff will likely argue that every terminated employee's final pay was inaccurate and thus, they were not paid all wages due at termination. Accordingly, the amount in controversy associated with this claim is at least **$469,296** (60 employees x 30 days x 8 hours/day x $32.59/hr).

**g. Attorneys' Fees**

55. Finally, Plaintiff seeks reasonable attorneys' fees for his claims which must also be considered in determining whether the jurisdictional limit is met. (*See generally* Complaint, Prayer for Relief).

56. "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). The attorneys' fees benchmark in the Ninth Circuit is 25%. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.3d 268, 272 (9th Cir. 1989) ("We note

---

[4] The $32.59 per hour average rate of pay for terminated non-exempt employees was again calculated by weighing the most recent hourly rates of pay for the non-exempt employees known to Charter at the time of filing of this Removal.

with approval that one court has concluded that the "bench mark" percentage for the fee award should be 25 percent.") (citation omitted); *Lo v. Oxnard Euro. Motors, LLC*, 2012 U.S. Dist. LEXIS 73983 at *9 ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees award a twenty-five percent of the common fund of recovery.").

**h. <u>Summary of Amount in Controversy</u>**

57. Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid straight time, unpaid overtime, meal period premiums, rest periods premiums, wage statement penalties, final wages not timely paid, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28 U.S.C. § 1332(d)(2):

| Plaintiff's Claim | Amount in Controversy |
|---|---|
| Unpaid Meal Period Claim | $ **$1,675,000.00** |
| Unpaid Rest Period Claim | $ **$1,675,000.00** |
| Unpaid Time Claim | $ **$7,711,200** |
| Unpaid Overtime Claim | $ **$3,304,800** |
| Wage Statement Claim | $ **$1,020,000** |
| Final Wage Claim | $ **$469,296** |
| Attorney's Fees | **$ 3,963,824** |
| TOTAL before Attorneys' Fees | **$ 15,855,296**<br>**+ Injunctive Relief + Reporting Time** |
| TOTAL after Attorneys' Fees | **$ 19,819,120**<br>**+ Injunctive Relief + Reporting Time** |

58. Accordingly, although Charter fully denies Plaintiff's claims of wrongdoing as alleged in his Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it readily exceeds the $5,000,000 threshold required under CAFA.

## IV. FEDERAL RULES OF CIVIL PROCEDURE, RULE 11

59. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and in accordance with 28 U.S.C. § 1446. The statements and allegations contained herein are true and correct to the best of the knowledge and belief of the undersigned based upon a review of the material available, including Exhibit A hereto.

## V. CONCLUSION

60. For the reasons set forth above, the Complaint is removable to this Court under 28 U.S.C. § 1332(d). Pursuant to 28 U.S.C. § 1446(b), the Notice of Removal was filed within thirty (30) days of service on any defendant of a paper providing notice that a basis for removal of this action exists. In accordance with 28 U.S.C. § 1446(d), copies of this Notice of Removal shall be timely served upon Plaintiff, through his counsel of record, and a copy of this Notice of Removal shall be timely filed with the Superior Court.

61. Charter has given the undersigned counsel authority to sign and file this Notice of Removal.

WHEREFORE, Charter respectfully removes this action, currently pending in the Superior Court of the State of California for the County of San Diego, as Case Number 37-2019-00058788-CU-OE-CTL, to the United States District Court, Southern District of California.

DATED: January 8, 2020 **THOMPSON COBURN LLP**

By: /s/ Arthur F. Silbergeld
**ARTHUR F. SILBERGELD**
**GEOFFREY L. WARNER**
**KEITH R. RASHER**
Attorneys for Defendant
CHARTER COMMUNICATIONS, INC.