# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVANAN MAHARAJ,<br><br>                              Plaintiff,<br>     v.<br>CHARTER COMMUNICATIONS, INC.,<br>                             Defendant. | Case No. 20-cv-00064-BAS-LL<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND PROCEEDINGS TO STATE COURT**<br><br>**(ECF No. 56)** |

Defendant Charter Communications, Inc. removed this case from San Diego County Superior Court on January 28, 2020, asserting federal jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) ("Notice of Removal"). (ECF No. 1, Notice.) Plaintiff filed a motion to remand, arguing Defendant's Notice of Removal fails to show that CAFA's amount-in-controversy requirement has been satisfied ("Motion to Remand"). (ECF No. 56, Mot.; ECF No. 56–1, Mem.) Defendant opposes (ECF No. 57, Opp'n) and Plaintiff replies (ECF No. 60, Reply). The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **DENIES** Plaintiff's Motion to Remand. (ECF No. 56.)

## I. BACKGROUND

Defendant Charter Communications, Inc. employed Plaintiff Devanan Maharaj as a nonexempt "Maintenance Technician" from approximately November 2000 until his resignation in approximately November 2019. (Compl. ¶ 23).[1] Plaintiff alleges that Defendant denied him and employees the benefits of the California Labor Code and the Industrial Welfare Commission ("IWC") Wage Orders.[2] Specifically, Plaintiff alleges that Defendant failed to pay meal and rest period premiums; pay regular and overtime wages; and provide accurate and itemized wage statements.[3] (*Id*. ¶¶ 70–123.) Plaintiff brings these claims on behalf of "[a]ll current and former nonexempt employees of Defendant[] CHARTER COMMUNICATIONS, INC. who worked as a Maintenance Technician in the State of California during any period at any time from November 5, 2015, through the present[]" ("Maintenance Technician Class"). (*Id*. ¶ 58.)

Plaintiff also claims that Defendant failed to pay him and other employees all wages due upon separation of employment.[4] (Compl. ¶¶ 130–46.) He brings that claim on behalf of a subclass comprised of "[a]ll members of the Maintenance Technician Class, whose employment with Defendant[] ended at any time from November 5, 2016, through the present[]" ("Waiting Time Penalties Subclass").[5] (*Id*. ¶ 59.)

---

[1] Although the Complaint alleges that Plaintiff "is a current employee of Defendant['s]," that appears no longer to be the case. (Compl. ¶ 23.) John Fries, Defendant's Vice President of HR Technology, attests—and Plaintiff does not dispute—that Plaintiff resigned in or about November 2019 ("Fries Declaration"). (ECF No. 49-3, Fries Decl. ¶ 5.)

[2] The IWC was enacted in 1913 "to regulate the wages, hours, and working conditions of various classes of workers to protect their health and welfare." *Home Depot U.S.A., Inc. v. Superior Court*, 191 Cal. App. 4th 210, 216 (2010).

[3] Therefore, Plaintiff alleges violations of California Labor Code §§ 226.7 and 512; 510, 1194, and 1197; 558; and 226, respectively.

[4] Plaintiff pursues this claim pursuant to California Labor Code §§ 201–03.

[5] In addition, Plaintiff alleges that Defendant failed to pay waiting time wages and violated California Business and Professions Code § 17200, *et seq.*, and asserts a claim under the California Private Attorney General Act of 2004, Cal. Labor Code § 2699, *et seq.* (Compl. ¶¶ 124–29, 147–86.) Because Defendant does not consider these causes of action in its amount-in-controversy estimate and because the Court finds there is no need to do so to determine that the amount in controversy exceeds $5 million, the Court will not touch upon these claims.

On March 17, 2021, Defendant filed a Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel"). (ECF No. 49.) While that first-filed Motion was pending, Plaintiff filed the instant Motion, challenging this Court's jurisdiction and, thus, its authority to rule on the Motion to Compel. (ECF No. 56.)

## II.   LEGAL STANDARD

The propriety of removal depends on whether the case originally could have been filed in federal court. *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("Defendants generally may remove 'any civil action brought in a State court in which the [federal] district courts … have original jurisdiction.'" (quoting 28 U.S.C. § 1441(a))). The analysis of whether removal is warranted focuses on the pleadings "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002).

CAFA expressly extends "original jurisdiction to state-law claims in class actions under relaxed diversity requirements." *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1036 (9th Cir. 2020) (citing 28 U.S.C. § 1332(a)). While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89–91 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction," *Abrego v. Dow Chem.*, 443 F.3d 676, 685 (9th Cir. 2006). CAFA confers federal jurisdiction over class actions involving: (1) minimal diversity; (2) at least 100 putative members; and (3) over $5,000,000 in controversy, inclusive of attorneys' fees but exclusive of costs and interest. 28 U.S.C. § 1332(d)(2), (5). Class members' claims may be aggregated to reach the amount-in-controversy requirement. *Biag v. King George – J&J Worldwide Servs. LLC*, No. 20-CV-307-BAS-DEB, 2020 WL 4201192, at * 3 (S.D. Cal. July 22, 2020).

A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold[.]" *Dart Cherokee*, 574 U.S. at 89. However, where, as here, a plaintiff contests defendant's asserted amount in controversy, "evidence establishing the amount is required." *Id.* at 90. "In such a case,

both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 82. The Ninth Circuit has instructed that when a party relies on a chain of reasoning that includes assumptions in order to approximate the amount in controversy, those assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). Rather, those assumptions must be predicated upon the language in the complaint or based upon "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

## III. ANALYSIS

### A. Primacy of Motion to Remand

As an initial matter, this Court finds it appropriate to rule on the Motion to Remand despite Defendant's having filed its Motion to Compel first. *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (en banc) (finding it well-established that district courts "have inherent power to control their dockets"). Noting that Plaintiff brought this Motion 15 months after removal and only once it moved to compel arbitration, Defendant contends that this Motion is a dilatory tactic. (Opp'n 2.) However, a challenge to subject matter jurisdiction can be raised at any time during a case and can neither be waived nor forfeited. Fed. R. Civ. P. 12(h); *Mashiri v. U.S. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013). Moreover, this Court must have subject matter jurisdiction to issue an order respecting Defendant's Motion to Compel. *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009) (holding that the FAA "does not enlarge federal-court jurisdiction" and, thus, a district court must have jurisdiction to compel arbitration). Consequently, the Court must address the merits of Plaintiff's Motion to Remand before acting on Defendant's Motion to Compel.

### B. Defendant's Calculation of Amount in Controversy

Plaintiff does not dispute the numerosity requirement of CAFA has been met. And although he contends in passing that Defendant fails to show minimum diversity (Mem. 2), Plaintiff makes no such substantive argument in his papers. Nor does he submit evidence to refute the attestation of Defendant's Human Resources Director, Valerie Chandler ("Chandler Decl."), that Defendant is incorporated in Delaware and maintains its principal place of business in Connecticut, thus satisfying CAFA's diversity requirement (Notice, Ex. 3 ("Chandler Decl.") ¶ 2, ECF No. 1-3). Accordingly, the sole dispute at issue is whether Defendant has proven by a preponderance of the evidence CAFA's amount-in-controversy requirement.

Defendant's amount-in-controversy calculation rests upon the Chandler Declaration submitted alongside the Notice of Removal (ECF No. 1-3) and the allegations in the Complaint (ECF No. 1-2).

Ms. Chandler states that during the putative class period, Defendant always employed at least 400 nonexempt Maintenance Technicians in the State of California. (Chandler Decl. ¶¶ 7–8.) According to Ms. Chandler, those employees earned an average hourly rate of $27.00; "typically worked 49 out of the 52 weeks [each year] after taking into account time not worked due to vacation, sickness or other leaves"; typically worked "at least forty (40) hours per week"; and were paid on a bi-weekly basis. (*Id.* ¶¶ 6, 8, 10–11.) Ms. Chandler further attests that from November 5, 2016 through the date of removal, approximately 60 of those employees left Defendant's employ. (*Id.* ¶ 9.) Ms. Chandler states that those employees earned an elevated average hourly rate of $32.59. (*Id.* ¶ 9.)

The Complaint alleges generally that Defendant engaged in a "systematic pattern of Labor Code and IWC Wage Order violations… includ[ing] but [] not limited to": failing to pay meal and rest premiums; failing to pay regular and overtime wages; and failing to provide accurate and itemized wage statements. (Compl. ¶ 5.) The Complaint

also alleges that Defendant systematically failed to pay Waiting Time Penalties Subclass members all outstanding final wages. (*Id.* ¶¶ 5, 59.)

### 1. Unpaid Meal Period and Rest Period Claims

Plaintiff's first and second causes of action are for damages on behalf of the Maintenance Technician Class under Labor Code §§ 226.7 and 512 for failure to pay meal and rest period premiums, respectively. Defendant calculates the amount placed into controversy by both claims using the equation *$27.00 per hour x 1 day per week x 147 workweeks[6] x 400 Maintenance Technician Class members.* Consequently, Defendant approximates $1,587,600 in controversy for each claim, and **$3,175,200.00** in total. (Notice ¶¶ 30–36.)

### 2. Unpaid Regular and Overtime Wage Claims

Plaintiff's third and fourth causes of action are for damages on behalf of the Maintenance Technician Class under Labor Code §§ 510, 1194, and 1197 for failure to pay regular and overtime wages, respectively.

To calculate regular wages, Defendant assumes a thirty-minute violation (the length of a legally mandated meal period that was not given) every day for each class member and used the formula *$27.00 per hour x 0.5 hours per day x 5 days x 196 workweeks[7] x 400 Maintenance Technician Class members*. Defendant also assumes that it committed an additional one-hour violation each week attributable to instances in which Plaintiff alleges that he and other employees worked while off-duty but for which they were not compensated. (*See* Compl. ¶ 107.) Defendant calculates unpaid regular

---

[6] This figure represents the number of weeks Ms. Chandler attests employees worked each year (*49 weeks*) multiplied by the length of the statutory period applicable to claims of unpaid meal and rest premiums (*3 years*). (Notice ¶ 44; Chandler Decl. ¶ 10.) The Notice of Removal errs by including in its calculation all 52 weeks of each year despite Ms. Chandler's attestation otherwise. Defendant repeats this error in calculating each claim for which which the number of workweeks is a relevant factor in the formula used to determine the amount in controversy. Although the error is negligible, the Court corrects each such formula to reflect the number of workweeks identified in the Chandler Declaration.

[7] This figure represents the number of weeks Ms. Chandler attests employees worked each year (*49 weeks*) multiplied by the length of the statutory period applicable to claims of unpaid minimum and regular wage (*4 years*). (Notice ¶ 44; Chandler Decl. ¶ 10.)

wages associated with that time by the equation of *$27.00 per hour x 1 hour per week x 196 workweeks x 400 Maintenance Technician Class members*. Accordingly, Defendant estimates that the amount in controversy associated with Plaintiff's unpaid regular wage claim is **$7,408,800.00**. (Notice ¶ 51.)

With respect to unpaid overtime wages, Defendant assumes each class member worked one hour of overtime each week while off-duty and calculated the amount placed into controversy by that claim using a similar equation of *($27.00 per hour x 1.5 overtime pay) x 1.0 hours per week x 196 workweeks x 400 Maintenance Technician Class members*. Accordingly, Defendant approximates that the amount in controversy associated with Plaintiff's unpaid overtime claim is **$3,175,200.00**. (Notice ¶ 49.)

### 3. Noncompliant Wage Statement Claim

The sixth cause of action is for damages and penalties on behalf of the Maintenance Technician Class under Labor Code § 226 for failure to provide accurate and itemized wage statements. Defendant assumes that Plaintiff seeks only penalties and does not endeavor to estimate potential liability attributable to actual damages. To calculate the amount in controversy, Defendant assumes that every wage statement it issued to each class member during the one-year statutory period was deficient.[8] According to Defendant, because its employees were paid bi-weekly, there were 26 pay periods during the statutory period. (Chandler Decl. ¶ 8.) Violations under Labor Code § 226 are assessed at a $50 penalty for the first violation and a $100 penalty for each subsequent violation, not exceeding an aggregate amount of $4,000 per employee. Defendant estimates that the amount placed into controversy by this claim is **$1,020,000.00** but does not provide its calculus. Nevertheless, it is apparent to the Court that Defendant reached that figure by the equation *(($50 x 1 pay period) + ($100 x 25 pay periods)) x 400 Maintenance Technician Class members*.

---

[8] It is well-settled under California law that a one-year statute of limitations governs if the plaintiff pursues wage statement penalties. Cal. Code Civ. P. § 340.

### 4. Unpaid Final Wage Claim

The seventh cause of action is for damages on behalf of the Waiting Time Penalties Subclass under California Labor Code §§ 201–03 for failure to pay all outstanding wages owed within 72 hours of employees' separation from employment. For each day it is in violation of those provisions—but not extending beyond 30 days—an employer will be assessed a penalty equal to the employee's wages. Cal. Labor Code §§ 201–03. To calculate the amount in controversy associated with this claim, Defendant assumes that it failed to pay each Waiting Time Penalties Subclass member his or her outstanding wages within 30 days of separation from employment and uses the equation of *($32.59 per hour x 8 hours) x 30 days x 60 Waiting Time Penalties Subclass members* to reach **$496,926.00** in controversy.

### 5. Attorneys' Fees

Plaintiff seeks an award for reasonable attorneys' fees under California Labor Code § 1194. Defendant assumes that if Plaintiff prevails, his attorney will be awarded 25% of the total winnings, as, according to Defendant, that percentage represents the "benchmark" in common fund recovery suits. (Notice ¶ 56.)

Defendant offers the following valuation of Plaintiff's claims and the total amount placed into controversy by the Complaint:

| Cause of Action | Amount in Controversy |
|---|---|
| First COA – Unpaid Meal Period | $1,587,600.00 |
| Second COA – Unpaid Rest Period | $1,587,600.00 |
| Third COA – Unpaid Regular Wage: (*30-Minute Meal Period*) | $5,292,000.00 |
| Third COA – Unpaid Regular Wage: (*1-Hour Off-Duty Period*) | $2,116,800.00 |
| Fourth COA – Unpaid Overtime Wage | $3,175,200.00 |
| Sixth COA – Wage Statement | $1,020,000.00 |
| Seventh COA – Unpaid Final Wage | $469,296.00 |
| **Total** | **$15,248,496.00** |

| Attorneys' Fees (25% Benchmark) | $3,812,124.00 |
|---|---|
| **Total with Attorneys' Fees** | **$19,060,620.00** |

### C. Whether the Amount in Controversy is Met

#### 1. General Sufficiency of Evidence

Plaintiff first contends that this Court should reject Defendant's calculations because they are not supported by specific human resources data and business records. (Mem. 5–6.) According to Plaintiff, Defendant is categorically prohibited from satisfying its evidentiary burden through reliance upon Ms. Chandler's attestations alone. Plaintiff's argument is at odds with well-settled law. "Affidavits and declarations serve as sufficient evidentiary tools" from which a court may determine whether a defendant has proven the amount in controversy exceeds $5,000,000 by a preponderance of the evidence. *Tajonar v. Echosphere, L.L.C.*, 14-CV-2732-LAB-RBB, 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (same). "Defendant need not 'produce business records setting forth the precise number of employees in [the] putative class … and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.'" *Bryant*, 284 F. Supp. 3d at 1151 (quoting *Long v. Destination Maternity Corp.*, 15-CV-2836-WQH-RBB, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016)); *Muniz v. Pilot Travel Ctrs. LLC*, No. 07-cv-0325-FCD-EFB, 2007 WL 1302504, at *4–5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records or to prove or disprove liability and/or damages … at this premature (pre-certification stage of the litigation) …. Rather it is defendant's burden to produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000[.]")

Furthermore, the Court finds the Chandler Declaration admissible under the Federal Rules of Evidence, as it lays adequate foundation for the employment information she provides. *See Hernandez v. Nuco2 Mgmt., LLC*, No. 1:17-cv-01645-

LJO-JLT, 2018 WL 933506, at *5 (E.D. Cal. Feb. 16, 2018) (finding attestation of human resources employee sufficient as an evidentiary matter and as having adequate foundation). For instance, Ms. Chandler attests that in her capacity as a Human Resources Director for Defendant she has "personal knowledge of the facts set forth in [her] declaration" and/or "knowledge of such facts based on [her] review of [Defendant's] business records and files" of which she is a custodian. (Chandler Decl. ¶ 1.) Ms. Chandler's personal knowledge and her knowledge based on her review of Defendant's business records to which she had access as part of her duties as one of Defendant's Human Resources Directors provides a sufficient foundation. *See, e.g., Hernandez*, 2018 WL 933506, at *4–5 (sufficient foundation laid by a declarant attesting to knowledge of business records based on personal review, stemming from job duties as director for human resources); *Cagel v. C&S Wholesale Grocers, Inc.* No. 2:13-cv-02134-MCE-KJN, 2014 WL 651923, at *1 (E.D. Cal. Feb. 19, 2014) (same).

### 2. The Amount Plaintiff's Claims Place into Controversy

The Court observes that where, as here, a complaint contains multiple alleged wage-and-hour claims each giving rise to a basis for recovery, courts in this district typically assess whether the party seeking to invoke federal jurisdiction has shown by a preponderance of the evidence the amount placed into controversy by each claim or basis for recovery and then determine whether, in the aggregate, that amount exceeds $5 million. *See, e.g.*, *Biag*, 2020 WL 4201192, at * 1; *Tajonar*, 2015 WL 4064642, at *1; *Vilitchai v. Ametek Programmable Power, Inc.*, No. 3:15-CV-1957-L (BLM), 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017); *Olson v. Becton, Dickinson & Co.*, No. 19-CV-865-MMA-BGS, 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019). The Court adopts that approach here.

#### i. Unpaid Meal Period and Rest Period Claims

Plaintiff principally argues that the Court should reject Defendant's calculation of the amount placed into controversy by the first and second causes (and, for that matter,

all the other causes of action alleged) because Defendant grossly exaggerates the size of the Maintenance Technician Class.

Specifically, Plaintiff relies on the "Maintenance Technician Report" appended to the declaration of his attorney, David Lin, Esq., which Mr. Lin attests establishes that Defendant employed 641 nonexempt Maintenance Technicians in California during the putative class period and, moreover, that only 149 of those members affirmatively opted out of an arbitration agreement with Defendant that assertedly contains a class-action waiver.[9] (*See* Mot., Ex. 2 ("Lin Decl.") ¶ 8, ECF No. 56-2; *id.*, Ex. A (Maintenance Technician Report).) Plaintiff contends that only those 149 employees retaining their class-action rights against Defendant should be considered in determining the amount in controversy. (Mem. 6–7.)

"The amount in controversy is measured by Plaintiff's claims, not Defendant's defenses." *Murphy v. Am. Gen. Life Ins. Co.*, No. ED CV14-00486 JAK (SPx), 2014 WL 3417606, at *3 (C.D. Cal. July 1, 2014). "The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not … oust jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see Theis Res. Inc. v. Brown & Bain*, 400 F.3d 659, 664 (9th Cir. 2005) (holding that the amount in controversy is not bound by a zero-dollar arbitration award, but rather is the amount sought to recover). "[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount in controversy is actually less than the jurisdictional

---

[9] The Maintenance Technician Report was produced by Defendant in discovery. It is a spreadsheet that lists, by an "assigned employee correspondence number," each nonexempt Maintenance Technician [employed by Defendant in California]" since November 5, 2015. (Lin Decl. ¶ 7.) There are 641 rows with 641 "assigned employee correspondence numbers. (Maintenance Technician Report.) The Report contains a column that indicates whether each employee accepted or "opted out of Solution Channel"—Defendant's employee dispute resolution program—that includes an arbitration agreement with a class action waiver. (*Id.* ¶¶ 7–8.) The Report shows 149 employees affirmatively opted out while another 17 employees took no action. (Maintenance Technician Report.) The remaining 475 employees accepted the terms of the Solution Channel. (*Id.*)

minimum." *Inmexti, S. de R.L. de C.V. v. TACNA Servs., Inc.*, No. 12-cv-1379-BTM-JMA, 2012 WL 3867325, at *4 (S.D. Cal. Sept. 6, 2012) (citation omitted).

Here, Plaintiff invokes Defendant's potential affirmative defense of waiver to diminute the size of the Maintenance Technician Class and, thus, the amount placed into controversy by each claim. He may not do so for courts "do[]not reach [the] merits of [d]efendants' potential defenses without first determining jurisdiction." *Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx), 2017 WL 2541401, at *8 (C.D. Cal. June 12, 2017) (rejecting plaintiff's argument to diminish the size of the putative class for the purpose of determining the amount in controversy based on the existence of arbitration agreements that would preclude certain class members from participating). Accordingly, the qualifications for membership should be adjudged by the class action allegations in the Complaint, unabridged by any affirmative defense. *See TACNA Servs., Inc.*, 2012 WL 3867325, at *4.

The Court also observes that Plaintiff seeks to represent "*[a]ll* current and former nonexempt employees of Defendant[] CHARTER COMMUNICATIONS, INC. who worked as a Maintenance Technician in the State of California during any period at any time from November 5, 2015, through the present." (Compl. ¶ 58 (emphasis added).) The Court refuses to graft into the Complaint exclusionary language that would limit the scope of the class for reasons that are not even apparent on the face of the complaint. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274 (9th Cir. 2017) (holding that plaintiff may not "amend their class definition" after removal "in such a way that would alter the jurisdictional analysis"); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (holding whether remand is proper must be ascertained based on the pleadings at the time of removal).

In so holding, the Court finds Defendant's assumption in its calculations that it employed 400 Maintenance Technician Class members at any given time is both supported by Ms. Chandler's attestations (Chandler Decl. ¶¶ 6–8), as well as the Maintenance Technician Report, which reflects that Defendant employed a total of 641

- 12 -

20cv0064

nonexempt Maintenance Technicians in the State of California during the period relevant to this Complaint.

Plaintiff also challenges—with respect to each cause of action, including the first and second causes—Defendant's assumption that its employees worked 49 weeks per year. (Mem. 6–7.) To rebut Ms. Chandler's attestation, Plaintiff relies on extrinsic yet anecdotal evidence: his own timekeeping records from November 8, 2015, through January 31, 2019, which assertedly reflect that he worked only 103 weeks during that period. (Lin Decl., Ex. 3; *id.* ¶ 10.) Plaintiff does not explain why his own experience would be indicative of the other at least 399 Maintenance Technicians employed at any given time during the putative class period. This omission is particularly problematic given that Plaintiff acknowledges he "spent a portion of the class period on leave[.]" (Mem. 7.) Indeed, Plaintiff does not dispute that he "took a leave of absence from on or about January 9, 2018 until on or about May 21, 2018" and again on or about "August 2, 2018 and remained on leave until the end of his employment in November 2019." (Fries Decl. ¶ 5.)

Although Defendant did not calculate the number of workweeks using the specific number of weeks each class member worked, and although the calculation does not account for every type of leave (*i.e.*, unpaid leave under the Family Medical Leave Act, for military service, or jury duty), the workweek approximation is neither vague nor unsupported. "[A]ccounting for applicable sick and vacation time," as Defendant does here, "is a reasonable and conservative method to calculate workweeks." *Hernandez*, 2018 WL 933506, at *5.[10]

Finally, Plaintiff argues that Defendant uses an unsupported violation rate to approximate the amount in controversy respecting the first and second causes of action. (Mem. 7–9.) "A defendant 'is not required to comb through its records to identify and

---

[10] Having addressed and rejected Plaintiff's arguments that Defendant's calculation is deficient because (1) it inflates the size of the Maintenance Technician Class and (2) its estimate of the number of weeks employees worked each year is unsupported, the Court will not repeat and address those same arguments that Plaintiff raises with respect to the remaining claims.

calculate the exact frequency of violations.'" *Tajonar*, 2015 WL 4064642, at *3 (quoting *Oda v. Gucci Am.*, Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-7469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015)). Nevertheless, a removing defendant may not "simply pull violation rates out of thin air[.]" *Toribio*, 2019 WL 4254935, at *3 (citing *Ibarra*, 775 F.3d at 1193). In determining which violation rate to use, parties make assumptions based on the allegations and language in the complaint. *Ibarra*, 775 F.3d at 1198; *see Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for plaintiff on all claims made in the complaint.").

"District courts have found that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation[s]." *Avila v. Rue 21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020); *see also Olson*, 2019 WL 4673329, at *4 (finding 25% violation rate to be appropriate based on plaintiff's "pattern and practice" allegations); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant*, 284 F. Supp. 3d at 1151 (using 60% violation rate for the meal period claim and 30% violation rate for rest period claim); *Alvarez v. Off. Depot, Inc.*, No. CV-17-7220-PSG (JPRx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate); *Oda*, 2015 WL 93335, at *4 (using 50% violation rate). Where allegations in the complaint instead refer to systematic, regular, or consistent violations, it is reasonable to assume a 20% violation rate (or one violation per week). *Sanchez v. Cap. Contractors*, No. C-14-2622-MMC, 2014 WL 4773961, at *3 (N.D. Cal. Sept. 22, 2014); *Biag*, 2020 WL 4201192, at *7.

As stated above, the Complaint alleges that Defendant's purported violations of the California Labor Code and IWC Wage Order constituted a "systematic pattern." (Compl. ¶ 5.) Moreover, with respect to Plaintiff's first and second causes of action in particular,

the Complaint alleges that Defendant had a "common policy … and practice" of failing to compensate Plaintiff and the Maintenance Technician Class with meal and rest period premiums. (Compl. ¶¶ 88, 98.) Defendant's assumption that it failed to pay one meal and one rest period premium each week fits squarely within the allegations of the Complaint. *Olson*, 2019 WL 4673329, at *4 (finding reasonable a higher 25% violation rate for "pattern and practice" allegations).

Accordingly, the Court finds Defendant has shown by a preponderance of the evidence that Plaintiff's first and second causes of action place in controversy **$1,587,600.00** each, and **$3,175,200.00** total.

### ii. Unpaid Regular Wage Claim

Plaintiff asserts that the violation rates Defendant assumed to approximate the amount placed into controversy by Plaintiff's third cause of action are egregiously high. As explained above, Plaintiff alleges that Defendant failed to compensate him and members of the Maintenance Technician Class for two categories of uncompensated time: (1) pre- and post-shift work and (2) the 30-minute meal periods through which Plaintiff and other employees worked.

With respect to the first category, Defendant's calculation assumes that Plaintiff and class members each performed one hour of work each week while technically off-duty. In addition to a "systematic pattern" of wage-and-hour violations, the Complaint alleges Plaintiff and class members "were required to monitor their phones and respond to phone calls from supervisors and/or the regional operations center regarding work-related issues at all times." (Compl. ¶ 107.) The "at all times" language used in the Complaint is analogous to other terms typically used in the wage-and-hour litigation context like "systematic, continuous, and regularly," which supports an assumption of one hour of uncompensated regular time per week. *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016). Accordingly, the Court finds that, to the extent Plaintiff's claim for unpaid regular

wages is based upon uncompensated, off-duty work, Defendant has shown by a preponderance of the evidence that the amount placed in controversy is **$2,116,800.00**.

With respect to the second category of time, the Court finds Defendant's assumption of a 100% violation rate both unsupported and incongruous with its other assumptions. The Complaint alleges that Plaintiff and the Maintenance Technician Class "*regularly* remained on duty during their 30-minute meal periods and were not compensated minimum wages for this time." (Compl. ¶ 107 (emphasis added).) This type of language supports a 20% violation rate. *See Sanchez*, 2014 WL 4773961, at *3 Furthermore, a 20% violation rate is consistent with Defendant's assumptions respecting Plaintiff's unpaid meal premium violations. *See supra* Sec. IV.C.i. Using a 20% violation rate, Defendant has shown by a preponderance of the evidence that the amount placed in controversy by this branch of Plaintiff's claim for unpaid regular wages is **$1,058,400.00**.[11]

### iii. Unpaid Overtime Wage Claim

Plaintiff again challenges the violation rate Defendant assumes to calculate the amount placed in controversy by the unpaid overtime wages claim. As stated above, the language of the Complaint generally alleges that Defendant "systematically" violated wage-and-hour provisions of the California Labor Code and IWC Wage Order. (Compl. ¶ 5.) The Complaint also specifically alleges that Plaintiff and Maintenance Technician Class members "regularly received phone call[s] on their personal cell phones while off the clock from Defendant[] and other co-workers regarding work-related issues such as scheduling or customer complaints and were not compensated overtime wages for this time." (Compl. ¶ 118.) "Where, as here, a proposed class includes all employees during the class period, and the plaintiff pleads that an employer has a regular or consistent practice of violating employment laws that harmed each class member, such an allegation

---

[11] The Court observes that the amount-in-controversy requirement is satisfied by the amount placed into controversy by just Plaintiff's first, second, and third causes of action. However, for completeness, the Court assesses whether Defendant satisfied its evidentiary burden for the remaining causes of action and attorneys' fees.

supports a defendant's assumption that every employee experienced at least one violation once per week," which is precisely what Defendant's calculation assumes here. *Arreola v. Finish Line*, No. 14-CV-03339-LJK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014).

Plaintiff also argues that Defendant's calculations respecting the unpaid overtime wage claim "double-count" time already assigned to Plaintiff's unpaid regular wage claim. (Mem. 10.) Defendant contends it has not "double-counted" wage violations, and that "[b]y seeking each type of wage, [Plaintiff] is putting their recovery into the amount in controversy." (Opp'n 14.) This Court agrees with Defendant. Because Plaintiff "included separate claims for both failure to pay minimum wages and failure to pay overtime, [Defendant] properly assumed one type of each violation per week." *Soto v. Greif Packaging LLC*, No. SACV-17-2104-JVS (JDEx), 2018 WL 1224425, at *4 (C.D. Cal. Mar. 8, 2018) (citing *Oda*, 2015 WL 93335, at *5). Moreover, as explained above, the language in the Complaint supports the assumed violation rate. (*See* Compl. ¶ 5.)

Accordingly, the Court finds Defendant has shown by a preponderance of the evidence that Plaintiff's fourth cause of action places in controversy **$3,175,200.00**.

### iv. Noncompliant Wage Statement Claim

Plaintiff contends that it is unreasonable for Defendant to estimate that each wage statement provided to each Maintenance Technician Class member during the one-year statutory period was deficient. (Mem. 11–12.) The Complaint alleges that Defendant failed to provide Plaintiff and Maintenance Technician Class members "with *each* wage payment an accurate wage statement showing, among other things, the inclusive dates of the period for which the employee is paid, the total regular and overtime hours worked during the pay period, the corresponding gross and net wages earned, all applicable hourly rates and the corresponding number of hours worked at each hourly rate." (Compl. ¶ 135 (emphasis added).) Defendant interprets "each" to mean that Plaintiff alleges Defendant provided deficient wage statements to all members "across all pay

periods." (Opp'n 16.) Plaintiff argues that interpretation is unfounded based on the Complaint's allegations. (Reply 6.)

Other courts have instructed that wage statement claims must be assessed in the context of the other wage-and-hour violations alleged in a complaint. *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939-EMC, 2013 WL 2950600, at *11 (N.D. Cal. June 14, 2013). The Court finds this approach persuasive, particularly given that Plaintiff alleges Defendant "systematically" failed to pay Plaintiff and Maintenance Technician Class members with meal- and rest-period premiums and to compensate them with all regular and overtime wages. (Compl. ¶ 5.) Because of the pervasiveness of these allegations, "it is reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement." *Id.*; *Gipson v. Champion Home Builders*, No. 1:20-CV-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020). Accordingly, the Court agrees that Defendant's assumption regarding the frequency of wage statement violations is reasonable and, thus, finds that Defendant has shown by a preponderance of the evidence that Plaintiff's sixth cause of action places in controversy **$1,020,000.00**.

v.  **Unpaid Final Wage Claim**

Plaintiff argues, *inter alia*, that Defendant assumes based on nothing that it failed to pay each Waiting Time Penalties Subclass members their outstanding wages for the full 30-day statutory period. (Mem. 12.) Defendant submits no proof that would enable the Court to probe this assumption. Moreover, the nexus between the allegations in the Complaint and Defendant's assumption that all Waiting Time Penalties Subclass members are still owed outstanding wages is too attenuated. (*See* Compl. ¶¶ 143–44.)

Moreover, Defendant fails to provide any proof justifying the elevated $32.59 hourly rate applicable only to Waiting Time Penalties Subclass members. Indeed, according to Ms. Chandler's attestations, the method by which she calculated the hourly rate for the Class and Subclass was identical: to reach both rates, Ms. Chandler weighed the hourly rates of pay "for the non-exempt employees known to Charter at the time of

[the Notice of Removal.]" (*See* Chandler Decl. ¶¶ 6 n.1, 9 n.2.) Yet the Chandler Declaration does not provide any conceivable basis to support how she determined the Subclass's hourly rate to exceed the Class's by over $5.00. Accordingly, Defendant fails to show by a preponderance the amount placed into controversy by the fifth cause of action.

### 3. Attorneys' Fees

Defendant asks the Court to use the percentage-of-recovery method to calculate the attorneys' fees in controversy. (Notice ¶¶ 55–56.) Citing, *inter alia*, the Ninth Circuit's decision in *Paul, Johnson, Alston & Hunt v. Graulty*, Defendant asserts that the attorneys' fees in controversy here should be assessed at a rate of 25%. 886 F.3d 268, 273 (9th Cir. 1989) ("We note with approval that one court has concluded that the "'benchmark' percentage for the fee award should be 25 percent."). Plaintiff contends that Defendant has failed to carry its burden of showing that the 25% benchmark is applicable here. The Court agrees.

Defendant simply asks the Court to adopt the 25 percent benchmark—an invitation the Ninth Circuit flatly rejected in *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). It submits no proof supporting application of that benchmark here. Accordingly, Defendant fails to meet its burden. *See, e.g., Akana v. Estee Lauder Inc.*, No. LA CV19-00806, 2019 WL 2225231, at *8 (C.D. Cal. May 23, 2019) (refusing to hold that 25 percent of total recovery was reasonable estimate of plaintiff's potential attorneys' fees in wage and hour class action where defendant did not provide other evidence).

### C. Preponderance of the Evidence

Defendant has proven by a preponderance the amount placed into controversy by Plaintiff's claims for unpaid meal and rest periods, unpaid regular and overtime wages, and noncompliant wage statements exceeds $5,000,000.00, as set out below.

| Cause of Action | Amount in Controversy |
|---|---|
| First COA – Unpaid Meal Period | $1,587,600.00 |
| Second COA – Unpaid Rest Period | $1,587,600.00 |
| Third COA – Unpaid Regular Wage: 30-Minute Meal Period | $1,058,400.00 |
| Third COA – Unpaid Regular Wage: 1-Hour Off-Duty Period | $2,116,800.00 |
| Fourth COA – Unpaid Overtime Wage | $3,175,200.00 |
| Sixth COA – Wage Statement | $1,020,000.00 |
| **Total** | **$10,545,600.00** |

Because Defendant has met its burden of establishing federal subject matter over this putative class action pursuant to CAFA, Plaintiff's Motion to Remand is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over this action pursuant to CAFA. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 56).

**IT IS SO ORDERED.**

DATED: September 29, 2021

Hon. Cynthia Bashant
United States District Judge