1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DEVANAN MAHARAJ,

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

Defendant.

Case No. 20-cv-00064-BAS-LL

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**(ECF No. 49)**

Before this Court is Defendant's motion to compel arbitration of Plaintiff's wage-and-hour claims, dismiss his class-action claims, and stay his Private Attorney General Act claim ("Motion"). (Mot., ECF No. 49.) Plaintiff opposed (Opp'n, ECF No. 51), Defendant replied (Reply, ECF No. 49), and, pursuant to this Court's October 6, 2021 order (Order, ECF No. 63), both parties provided supplemental briefing (Def.'s Supp. Mem., ECF No. 64; Pl.'s Supp. Mem., ECF No. 65). The Court finds the Motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motion and **STAYS** the action.

//

//

# I.    BACKGROUND

Plaintiff Devanan Maharaj worked as a non-exempt maintenance technician ("Technician") for Defendant Charter Communications, Inc., a telecommunications company. (Am. Compl. ¶ 23, ECF No. 21.) He began his employment in approximately November 2000. (*Id.*) In approximately October 2017, Plaintiff injured his shoulder and, consequently, went on short-term disability leave from approximately December 2017 through approximately May 2018. (Decl. of Keith Rasher, Esq. ("Rasher Decl."), Ex. 1 at 8, ECF No. 49-2.)[1] Though he returned, in August 2018, Plaintiff went back on leave and never again resumed his duties with Defendant. (*Id.*; Decl. of John Fries ("Fries Decl.") ¶ 5, ECF No. 49-3.)[2] While out on leave in 2019, Plaintiff submitted two applications for new positions with Defendant. (Fries Decl. ¶¶ 5, 8, Ex. 2.) Neither application was successful, and Plaintiff ultimately resigned in approximately November 2019. (Fries Decl. ¶ 5.)

On November 5, 2019, Plaintiff filed suit against Defendant in San Diego Superior Court, alleging pervasive violations of California wage-and-hour laws and regulations during the time that Defendant employed Plaintiff as a Technician. (*See* Compl., Ex. 1 to Notice of Removal ("Removal"), ECF No. 1-2.) In addition, Plaintiff alleged claims on behalf of a putative class of similarly situated Technicians and a claim pursuant to the California Private Attorney General Act ("PAGA") premised upon the same factual bases as his wage-and-hour claims. (*Id.*) On January 9, 2020, Defendant removed the action to this Court. (Removal, ECF No. 1.)

Approximately thirteen months following Removal, and after filing two motions to dismiss (ECF Nos. 14, 23), propounding and responding to discovery (Declaration of

---

[1] Mr. Rasher represents Defendant in this proceeding. (Rasher Decl. ¶ 1.) Because Exhibit 1 to the Rasher Declaration lacks consistent internal pagination, all page citations thereto refer to the page numbers provided by the Court's ECF system.

[2] Mr. Fries is a Vice President of HR Technology for Defendant. (Fries Decl. ¶ 1.) He is "responsible for data reporting sourced from PeopleSoft, a system used by [Defendant] to electronically collect maintain and report on employee information[.]" (*Id.*)

David Lin, Esq. ("Lin Decl.") ¶¶ 3–11, Exs. B–G, ECF No. 51-1),[3] and participating in court conferences and meet-and-confers with Plaintiff (*id.* ¶¶ 11, 13), Defendant submitted the present Motion on March 17, 2021 (Mot.).  Defendant asserts that Plaintiff "expressly agreed to arbitrate all disputes" when he applied internally for new positions in 2019.  (Mot. 3.)  Specifically, Defendant avers that, when Plaintiff completed his applications through Defendant's online interface known as "BrassRing," Plaintiff agreed to (1) participate in Defendant's "employment-based legal dispute and resolution and arbitration program," entitled "Solution Channel," and (2) be bound by the terms of Defendant's Mutual Arbitration Agreement ("MAA").  (*Id.*; Fries Decl. ¶¶ 6, 9–11.)

### A.   BrassRing Interface

As mentioned above, while on leave but still employed as a Technician, Plaintiff applied for "Project Manager" and "Field Operations Supervisor" positions with Defendant in March and June of 2019, respectively.  (Fries Decl. ¶¶ 5, 8, Ex. 2.)  According to Defendant, during the application processes, BrassRing presented Plaintiff (as it would any applicant) with Defendant's "Solution Channel webpage."  (Webpage, Ex. 3 to Fries Decl., ECF No. 49-6; *id.* ¶ 9.)  BrassRing prompted Plaintiff:

> Charter requires that all legal disputes involving employment with Charter or application for employment with Charter, be resolved through binding arbitration.  Charter believes that arbitration is a fair and efficient way to resolve these disputes.  Any person who submits an application for consideration by Charter agrees to be bound by the terms of Charter's Mutual Arbitration Agreement, where the person and Charter mutually agree to submit any covered claim, dispute or controversy to arbitration.  By submitting an application for consideration you are agreeing to be bound by the Agreement.

(Webpage)

The interface does not permit an applicant to proceed unless they select one of two radio buttons—"I agree" or "I do not agree"—and then click "Save and continue."  (Fries

---

[3] Mr. Lin represents Plaintiff in this action.  (Lin Decl. ¶ 1.)  All exhibits to the Lin Declaration are attached at ECF No. 51-1.

Decl. ¶ 14.)  BrassRing warns that an applicant who selects the button entitled "I do not agree" "remov[es] [them]sel[ves] from the application process, and [Defendant] will not consider [their] application for employment." (*Id.*; Webpage.)  Plaintiff selected the "I agree" radio button each time he submitted applications for open positions, indicating that he agreed to be bound by the terms of the MAA.  Defendant proffers Plaintiff's completed applications as proof that he did so.  (Fries Decl., Exs. 1–2.)

BrassRing refers and provides links to Defendant's MAA and a second document, the link of which is entitled "Program Guidelines."  (Webpage.)  An applicant can access, review, save, and print both documents through BrassRing.  (Webpage.)

**B.    The MAA**

The MAA starts with a notice instructing the applicant:

> PLEASE READ THE FOLLOWING MUTUAL ARBITRATION AGREEMENT ("AGREEMENT") CAREFULLY.  IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, CURRENT EMPLOYEE, OR FORMER EMPLOYEE), YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND CHARTER COMMUNICATIONS (CHARTER) TO BINDING ARBITRATION.  YOU ARE ALSO AGREEING TO WAIVE ANY RIGHT TO LITIGATE THE DISPUTE IN A COURT AND/OR HAVE THE DISPUTE DECIDED BY A JURY.

(MAA at 1, Ex. 4 to Fries Decl., ECF No. 49-7.)

The MAA states:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by you and Charter.

(*Id.* § 1.)

- 4 -

20cv0064

Under the MAA, Defendant and applicant mutually agree to submit certain "covered claims" to arbitration.  In pertinent part, Section B of the MAA defines "covered claims" as:

> 1. All disputes, claims, and controversies that could be asserted in court or before an administrative agency for which [the applicant] or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: . . . wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses) . . . ; [and]

> *     *     *     *

> 3. All disputes related to the arbitrability of any claim or controversy.

(*Id.* §§ B.1, B.3.)[4]

The MAA contains a severability clause as well.  (*Id.* § Q.)  It provides, in pertinent part:

> [I]f any portion or provision of this Agreement (including, without implication or limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid or enforceable to the fullest extent permitted by law and said illegal, invalid, or unenforceable portion or provisions shall be deemed not to be a part of this Agreement.  The only exception to this severability provision is, should the dispute involve a representative, collective or class action claim, and the representative, collective, and class action wavier (Section D) is found to be invalid or unenforceable for any reason, then this Agreement (except for the parties' agreement to waive a jury trial) shall be null and void with respect to such representative, collective, and/or class claim only, and the dispute will not be arbitrable with respect to such claims.

---

[4] The MAA provides a list of "Excluded Claims," none of which appear applicable here. (MAA § C.)

- 5 -

Finally, the MAA contains an integration clause. (*Id.* § P.)  It expressly provides that the MAA "supersedes any prior or contemporaneous oral or written understanding on the subject[.]" (*Id.*)

Notably, for the purpose of deciding this Motion, the MAA does not contain an "opt-out" provision or otherwise confer upon applicants a right to "opt-out."  The MAA provides that an applicant becomes "legally bound by" its terms "as of the date [the applicant] consent[s] to participate in Solution Channel." (*Id.* § V.)

## C.    Solution Channel Guidelines

The "Program Guidelines" document to which BrassRing refers is entitled "Solution Channel Guidelines." (Guidelines, Ex. 5 to Fries Decl., ECF No. 49-8.)  As the name suggests, the Solution Channel Guidelines delineate the rules and parameters for Defendant's Solution Channel program. (Fries Decl. ¶ 6.)  Solution Channel "is a dispute resolution alternative [that] is the means by which a current employee, a former employee, an applicant for employment, or [Defendant] can efficiently and privately resolve covered employment-based legal disputes." (Guidelines 6.)

Defendant implemented Solution Channel on October 6, 2017. (*Id.*)  The Solution Guidelines provide the following parameters for enrollment pursuant to its "General Rules":

1.    Unless there is an agreement to the contrary, Solution Channel is the exclusive means of resolving employment-related legal disputes that are covered under this Program.

\*       \*       \*       \*

3.    Upon implementation of Solution Channel, current employees will be provided a 30-day opt-out period.  Those employees will be covered by Solution Channel unless they opt out.  Those employees covered by a collective bargaining agreement or other employment agreement are excluded from Solution Channel unless expressly allowed under those agreements (although nothing in this document shall limit the

- 6 -

applicability of any arbitration or other dispute resolution provision contained in those agreements.)

4. Applicants who choose to be considered for employment with Charter are required to accept Charter's Mutual Arbitration Agreement.

(Guidelines 8.)

Neither party proffers evidence or otherwise avers that Plaintiff was covered by a collective bargaining agreement or other employment agreement pre-dating Solution Channel and the MAA. Moreover, although Plaintiff was a "current employee" at the time of Solution Channel's implementation, Defendant acknowledges that, because of its own oversight, it never enrolled Plaintiff into Solution Channel. (Def.'s Supp. Mem. 1 & n.1.) Specifically, Defendant asserts that it did "not presen[t]" Plaintiff "with the opportunity to participate in Solution Channel in October 2017" because Defendant's human-resources software "had not yet updated to reflect that [Plaintiff] had returned from a recent leave of absence." (*Id.* n.1.) Accordingly, Defendant did not send to Plaintiff the Solution Channel "announcement email." (*Id.*) For that reason, Defendant concedes that Plaintiff was not subject to the MAA by virtue of Solution Channel's implementation; rather, Defendant asserts Plaintiff became bound by the MAA when he first applied for a new position in March of 2019. (*Id.*)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts involving interstate commerce. 9 U.S.C. §§ 1, 2. If a party is bound to an arbitration agreement that falls within the scope of the FAA, the party may move to compel arbitration in a federal court. *Id.* §§ 3–4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "Generally, the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (citation omitted).

20cv0064

Given this strong federal preference for arbitration and the contractual nature of arbitration agreements, "a district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable agreement to arbitrate. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1010 (S.D. Cal. 2017) (quotations omitted). Instead, a district court's determinations are limited to (1) whether a valid arbitration exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citing *Howsam*, 537 U.S. at 83–85 and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). "Courts should not assume that the parties agreed to arbitrate arbitrability issues unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal citations omitted); *Howsam*, 537 U.S. at 84 (a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability that is presumptively for the court to decide). However, the Supreme Court has "repeatedly held" that "the FAA provides the default rule" that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, __ U.S. __, 139 S.Ct. 1407, 1418–19 (2019) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

## III.   ANALYSIS

Defendant now moves to compel arbitration and, consequently, to dismiss Plaintiff's class action claims and stay Plaintiff's PAGA claim. (Mot.) Defendant argues that Plaintiff agreed to arbitrate all wage-and-hour claims, including those underlying this

- 8 -

action, when he twice signed the MAA in March and June of 2019. (Mot. 10–13.)  In opposition, Plaintiff argues:  (1) the parties never agreed to arbitrate claims arising out of his employment as a Technician (*id.* 6–8); (2) Defendant waived its right to compel arbitration (Opp'n 11–14); and (3) the MAA is unconscionable under California law and therefore unenforceable (*id.* 8–11).

Defendant does not contest that this Court must determine as a preliminary matter whether an agreement to arbitrate exists. (Mot. 11–16.)  However, Defendant argues that Section B of MAA clearly and unmistakably delegates arbitrability of "all" other arbitrability issues, including waiver, scope, and validity, and thus precludes the Court from reaching Plaintiff's other arguments. (Mot. 10–11.)

Because the Court finds that the MAA constitutes a valid agreement to arbitrate and the Court agrees with Defendant's interpretation of the delegation clause, the Motion is granted.

### A.     Formation of Contract to Arbitrate

"[A] party who contests *the making of a contract* containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991) (emphasis in original) (citations and quotation marks omitted).  Courts generally "apply ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter (including arbitrability)." *First Options*, 514 U.S. at 944.  The party seeking arbitration has "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

To determine whether the parties agreed to arbitrate, the Court turns to California law governing the formation of contracts. *See, e.g.*, *id.* at 1289; *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  California Civil Code Section 1550 requires three elements for contract formation:  "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *Shaw v. Regents of Univ. of*

*Calif.*, 58 Cal. App. 4th 44, 52–53, 67 Cal.Rptr.2d 850, 855 (1997) (quoting *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196, 51 Cal.Rptr. 183, 196 (1966)).

"[O]rdinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms."  *Marin Storage & Trucking v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049, 107 Cal.Rptr.2d 645, 651 (2001); *see also Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228, 1238, 221 Cal.Rptr.3d 594, 601 (2017) ("Under California law, consent to a written contract may be implied by conduct.").  It is undisputed that, by completing applications for Project Manager and Field Operations Supervisor positions in March and June 2019, respectively, Plaintiff twice electronically signed the MAA, which obliges Plaintiff to submit to any arbitration "any [covered] dispute arising out of or relating to [Plaintiff's] pre-employment application and/or employment with [Defendant] or the termination of that relationship."  (*See* Fries Decl., Exs. 1–2; MAA § A); *Mendez v. LoanMe, Inc.*, 20-CV-00002-BAS-AHG, 2020 WL 6044098, at *5 (S.D. Cal. Oct. 13, 2020) (holding electronic signature is equivalent to wet-ink signature).  Nor is it disputed that the parties had capacity at the times they entered the MAA; the subject of arbitration is a lawful object of contract; and the MAA was supported by adequate consideration.  Simply put, Plaintiff does not challenge the existence of any of the essential elements of contract under California law.

Instead, Plaintiff argues that "the parties' conduct indicates that they did not intend for the [MAAs] to apply to" claims arising out of Plaintiff's employment as a Technician. (Opp'n 7.)  Plaintiff asks the Court to infer this from his assertion that Defendant treated Plaintiff differently than other "current employees" under the Solution Channel Guidelines by failing to provide him with a 30-day opt-out period following his submission of either application.  (*Id.*)  Under California law, a "contrac[t] must be interpreted, not only within the four corners of the instrument, but also by whatever extrinsic *evidence* is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  *Stilson v. Moulton-Niguel Water Dist.*, 21 Cal. App. 3d 928, 937, 98 Cal. Rptr. 914, 919 (Ct. App. 1971) (citing *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69

Cal. 2d 33, 37, 69 Cal.Rptr. 561, 564 (1968)) (emphasis added).  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. Co.*, 69 Cal.2d at 37.

To be sure, Plaintiff is not arguing that he opted out of Solution Channel and, therefore, the MAA is unsupported by mutual assent.  *C.f. Mendez*, 2020 WL 6044098, at *4  & n.5 ("[W]hether or not [a] plaintiff timely opted out—and therefore whether the parties mutually agreed to [arbitrate]—is an issue for the Court to resolve" and "cannot be subject to a delegation clause[.]" (citing *Erwin v. Citibank, N.A.*, 16-CV-03040-GPC-KSC, 2017 WL 1047575, at *1 (S.D. Cal. Mar. 20, 2017)); *Sonico v. Charter Comms., LLC*, No. 19-CV-01842-BAS-LL, 2021 WL 268637, at *6 (S.D. Cal. Jan. 27, 2021) ("Timely opting out of an agreement has generally been understood to be a rejection of an offer." (collecting cases)).  Rather, Plaintiff asks the Court to infer from Defendant's purported failure to abide by its own Solution Channel Guidelines that Defendant never intended to compel Plaintiff to arbitrate the underlying claims which pertain exclusively to time Plaintiff worked as a Technician, going back nearly four years prior to the applications at issue. This argument fails for several reasons.

As an initial matter, Plaintiff does not submit any evidence in support of his opt-out argument, despite this Court having afforded him opportunity to do so.  (Order 1.)  Only in his Opposition does Plaintiff assert Defendant never provided him with an opportunity to opt-out.  (Opp'n 8.)  These statements have no evidentiary value.  *Moran v. Selig*, 447 F.3d 748, 759–60 (9th Cir. 2006) (holding that opposition and reply briefs are not verified and therefore have no evidentiary value).  Even if the Court were to excuse the lack of evidence, Plaintiff's argument still must fail.  While it is true that Plaintiff was treated differently from other employees respecting the implementation of Solution Channel given Defendant's failure to enroll him in the Program automatically, Plaintiff's assertion that he

was treated differently than "current employees" in applying for new employment with Defendant is not borne out in the record.

BrassRing does not provide applicants with the opportunity to opt out. (Webpage.) Indeed, BrassRing prompts all applicants that refusal to agree to the MAA and Solution Channel will result in the disposal of their application. (*Id.*) The MAA does not contain an opt-out provision. (*See* MAA.) The only opt-out procedure delineated by the Solution Channel Guidelines relates to the initial enrollment of employees on October 6, 2017, when Solution Channel was first implemented. (Guidelines 8.) The Solution Channel Guidelines do not provide "applicants" with an opportunity to opt-out. (*See* Solution Channel Guidelines 8 ("Applicants who choose to be considered for employment with [Defendant] are required to accept Charter's Mutual Arbitration Agreement.").) The Solution Channel Guidelines do not distinguish between "applicants" who are employed by Defendant at the time of their applications and "applicants" who have no employer-employee relationship with Defendant, as Plaintiff claims. (*Id.*)

While it is true Plaintiff slipped through the cracks when Solution Channel was first implemented due to no fault of his own, Defendant's error concerning Plaintiff's enrollment has no bearing on the MAAs Plaintiff signed in 2019, for the MAA expressly "supersedes any prior or contemporaneous oral or written understanding on th[e] subject [of resolution of the covered disputes]." (MAA § P); *Sonico*, 2021 WL 268637, at *5 ("'It is a well-settled principle of contract law that a new agreement between the same parties on the same subject matter supersedes the old agreement.'" (citing *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 524 (E.D.N.Y. 2017)). Thus, even if Defendant had enrolled Plaintiff properly when it implemented Solution Channel, should Plaintiff subsequently have decided to exercise his opt-out rights under the Guidelines, by its terms, the MAA would supplant Plaintiff's decision to do so. (MAA § P.) Thus, this Court finds that the meaning Plaintiff ascribes to Defendant's failure to provide Plaintiff an opportunity to opt-

out following his submission of Project Manager and Field Operations Supervisor applications is unsupported by the record.[5]

Finally, Plaintiff cites no case supporting the notion that the absence of an opportunity to opt-out should be conceptualized as a contract formation issue. The Ninth Circuit repeatedly analyzed the question whether an arbitration agreement is felled by the lack of a "meaningful opportunity to opt-out" through the lens of unconscionability. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893–96 (9th Cir. 2002) ("The [arbitration agreement] is unconscionable because it is a contract of adhesion:  a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely." (citing *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 99 Cal. Rptr.2d 745 (2000))); *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) ("Conversely, if an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable."). Indeed, Plaintiff himself argues that the MAA must be set aside on the ground of procedural unconscionability because it is a contract of adhesion precisely because Defendant offered Plaintiff "no opportunity to opt-out except by abandoning his job application[s]." (Opp'n 9.) For the reasons stated below, the Court need not address today whether the MAA was procedurally unconscionable because that issue has been delegated to arbitration.

Plaintiff also styles as a formation issue his argument that the MAAs he signed "are too far attenuated from Plaintiff's work as a [Technician] to apply" to the claims underlying this action. (Opp'n 6–7.) In Plaintiff's view, the MAA applies only to claims arising from

---

[5] Plaintiff further argues without citing any authority that Defendant's admission that it stored Plaintiff's MAAs on its BrassRing platform rather than in Plaintiff's personnel file on the human-resource software known as "PeopleSoft" "is a strong indicator that [Defendant] did not intend for the agreements to apply to Plaintiff's employment as a [Technician]." (Opp'n 7.) Because Plaintiff does not explain why the location where Plaintiff's files were stored bears upon whether Defendant intended to be bound to arbitrate, the Court is unmoved by this argument.

20cv0064

his applications for the Project Manager and Operations Field Supervisor positions to which he applied in 2019.[6] (*Id.*)  Put differently, Plaintiff asserts that there is no valid and enforceable agreement between the parties to arbitrate claims arising out of his employment as a Technician.  The Court observes that this strand of Plaintiff's formation argument, too, is without textual support from the MAA.  Specifically, the MAA contains language that cuts against Plaintiff's interpretation.  The MAA's first paragraph provides: "IF YOU ACCEPT THE TERMS OF THE AGREEMENT (WHETHER YOU ARE AN APPLICANT, *CURRENT EMPLOYEE*, OR FORMER EMPLOYEEE), *YOU ARE AGREEING TO SUBMIT ANY COVERED EMPLOYMENT-RELATED DISPUTE BETWEEN YOU AND* [*CHARTER*] TO BINDING ARBITRATION." (MAA      at      1 (emphasis added).)   The MAA expressly covers claims "arising out of or relating to [Plaintiff's] pre-employment application and/or employment with Charter[.]" (MAA § A.) Under the MAA, "covered claims" include "all disputes, claims, and controversies that could be asserted in court or before an administrative agency for which you or Charter have an alleged cause of action related to pre-employment, employment, employment or post-employment-related claims[.]" (*Id.* § B.)  Each of these provisions are without limitation to the positions in connection with which Plaintiff signed the MAAs in 2019.

Even if it could be said that the MAA is ambiguous, it is well-settled that ambiguities about the scope of an agreement to arbitrate must be resolved in favor of arbitration.  *First Options*, 514 U.S. at 944; *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) ("Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960))).

---

[6] Plaintiff acknowledges that had Defendant selected him for one of these positions, the MAA would have applied to covered claims arising from his employment in that role. (Opp'n 7.)  However, as stated above, Plaintiff's applications were unsuccessful.

Most of all, this strand of Plaintiff's argument goes not to the MAA's validity—it does not raise questions about "the making of a contract," *Three Valleys Mun. Water Dist.*, 925 F.2d at 1140—but towards the scope of the MAA.  It is akin to asking this Court whether the claims underlying this action are "covered claims" delineated in Paragraph 1 of Section B of the MAA, which, for reasons stated below, the Court need not reach as such gateway arbitrability issues.

Because Plaintiff fails to dispute the existence of any essential element of a valid contract under California law, and because Defendant has proffered sufficient evidence and analysis in support of each such element, the Court finds that the MAA controls this dispute.

## B.  Delegation of Arbitrability

Given that Plaintiff agreed to the MAA, he also agreed to its delegation clause, located at Paragraph 3 of Section B ("Delegation Clause"), which provides that "You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as 'covered claims') will be submitted to arbitration in accordance with this Agreement:  . . .  (3) all disputes related to the arbitrability of any claim or controversy. (MAA § B.)  Plaintiff contends that the Delegation Clause only requires the Court to submit to arbitration whether the wage-and-hour claims underlying this action are "covered claims" under the MAA.  Plaintiff argues that the Delegation Clause does not preclude the Court from assessing waiver or validity because it "does not include the [American Arbitration Association ("AAA")]'s language specifying that disputes about 'the existence, scope, or validity of the arbitration agreement' are subject to arbitration."  (Opp'n 5.)

The determination of whether an arbitration clause is valid, applicable, and enforceable is reserved to the district court unless "the parties clearly and unmistakably provide[d] otherwise," such as by delegating the issue of arbitrability to arbitration.  *AT&T Techs., Inc.*, 475 U.S. at 649.  Although Plaintiff is correct that the Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability," *Brennan*, 796 F.3d at 1130, a court

"need not reference extrinsic materials" where, as here, the arbitration agreement "facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction." *Anderson v. Pitney Bowes, Inc.*, No. 04-CV-4808 SBA, 2005 WL 1048700, at *3 (N.D. Cal. May 4, 2005). Indeed, "[w]hen the contractual language is clear, there is no need to consider extrinsic evidence of the parties' intentions; the clear language of the agreement governs." *Han v. Synergy Homecare Franchising LLC*, 16-CV-3759-KAW, 2017 WL 446881, at *7 (N.D. Cal. 2017) (citing *Berman v. Dean Witter & Co.*, 44 Cal. App.3d 999, 1004, 119 Cal.Rptr. 130, 133 (Cal. App. 1975)).

As mentioned above, the Delegation Clause provides that "all disputes related to arbitrability of any claim or controversy" must be resolved through binding arbitration before the AAA. (MAA § B.3.) As Defendant correctly notes, "questions of arbitrability" include "gateway dispute[s] about whether the parties are bound by a given arbitration clause" or "whether an arbitration clause … applies to a particular type of controversy." (Mot. 10 (citing *Howsam*, 537 U.S. at 84)); *see also Yu v. Volt Info. Sci., Inc.*, No. 19-CV-01981-LB, 2019 WL 3503111, at *7 (N.D. Cal. Aug. 1, 2019) (holding that procedural unconscionability is a "question of arbitrability"); *Pac. Media Workers Guild v. San Francisco Chronicle*, No. 17-CV-00172-WHO, 2017 WL 1861853, at *3 (N.D. Cal. May 9, 2017) ("As the Supreme Court has held, when parties have agreed to have questions of arbitrability go to arbitration, 'procedural questions, such as whether a contractual grievance procedure has been followed, or the effect of waiver or delay,' must also be arbitrated." (quoting *Howsam*, 537 U.S. at 84)).

In support of their respective interpretations of the Delegation Clause, the parties point this Court towards competing decisions from the United States District Court for the District of Central California, both of which analyze whether precisely the same Delegation Clause delegates all gateway issues to the arbitrator or whether its language is more limited. Plaintiff relies principally upon *Gonzales v. Charter Comms., LLC et al.*, 20-CV-08299-

- 16 -

SB-AS (C.D. Cal.).[7]  (*See* Opp'n 5–6.)  In that case, the *Gonzales* Court held that the MAA's Delegation Clause refers to arbitration only the issue whether the claims underlying a judicial action fall within the list of "covered claims" set forth under Paragraph 1 of Section B.  *Gonzales* at 5–6.  The Court rejected the insinuation that the MAA's Delegation Clause "calls for the delegation of any gateway arbitrability issue whatsoever[.]"  *Id.*  Conversely, Defendant cites *Gennarelli v. Charter Comms., Inc. et al.*, 19-CV-09635-JLS-ADS (C.D. Cal.).[8]  (Def.'s Supp. Mem., Ex. 1.)  There, the *Gennarelli* Court held that by agreeing to the MAA's Delegation Clause, "the parties clearly and unmistakably indicated that the gateway issues of scope and validity must be decided by the arbitrator," including the plaintiff's arguments concerning waiver, scope, and validity. *Gennarelli* at 9.

The Court finds the *Gennarelli* Court's interpretation more closely fits the language deployed by the Delegation Clause, and that the Delegation Clause clearly and unmistakably indicates that the parties intended to arbitrate all gateway arbitrability issues, including waiver, scope, and unconscionability.  "An arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator."  *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015).  This the Delegation Clause does.  (*See* MAA § B.3.)

 "[E]ven where there is clear and unmistakable evidence of an intent to delegate questions of arbitrability to the arbitrator, the enforcement of the delegation provision itself is a separate, threshold for this Court to determine."  *Id*. at 955 (citing *Rent-A-Ctr.*, 561 U.S. at 70–71).  For example, where the delegation clause itself is unconscionable or otherwise unenforceable under the MAA, a court may decline to enforce it.  *Meadows v.*

---

[7] Citations to "*Gonzales* at __" refer to the Order, dated October 26, 2020, located at ECF No. 66 on the docket of that case, which can be accessed using the Public Access to Court Electronic Records service ("PACER").

[8] Citations to "*Gennarelli* at __" refer to the Order, dated April 22, 2021, located at ECF No. 39 on the docket of that case, which can be accessed using PACER.

20cv0064

*Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015) (citing *Brennan*, 796 F.3d at 1132).    Plaintiff does not challenge the enforceability of the Delegation Clause.    And although Plaintiff provides a single legal authority in support of a narrower reading of that Clause, *see Gonzales*, the Court is unmoved.    Instead, Plaintiff argues that (1) Defendant waived its right to compel arbitration; (2) the MAA does not cover claims arising prior to its signing; and (3) the MAA is unconscionable.    But these arguments are nonspecific to the Delegation Clause and instead bear upon the scope and validity of the MAA in its entirety.    *See Rent-A-Ctr.*, 561 U.S. at 74 (instructing courts must give effect to delegation provision in an arbitration agreement when nonmovant "d[oes] not make any arguments specific to the delegation provision" and "challenge[s] only the validity of the contract as a whole"); *Gennarelli* at 9.    The Court ends its inquiry here.

### C.    PAGA Claim

As mentioned above, in addition to individual and class-based wage-and-hour claims, the Complaint also contains a claim brought pursuant to PAGA predicated upon identical factual allegations.    (Am. Compl. ¶¶ 161–86.)    Both parties acknowledge that although the MAA contains a representative action waiver, Plaintiff's PAGA claims cannot be waived.    (Opp'n 11; Reply 6); *see*, *e.g.*, *Whitworth v. SolarCity Corp.*, 336 F.3d 1119, 1129–30 (N.D. Cal. 2018).

Under California law, courts have discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety.    *See* Cal. Civ. Code § 1670.5(a).    The relevant provision states:

> If the Court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

*Id.*    The California Supreme Court "has interpreted this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then 'must

determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.'" *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452–53, 260 Cal.Rptr.3d 35, 48 (2000) (quoting *Gentry v. Superior Court*, 42 Cal. 4th 443, 472–73, 64 Cal.Rptr.3d 773, 796 (2007)).  California courts have further held that "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement[,]" noting that refusing to enforce an entire agreement is "contemplate[d] … only when an agreement is 'permeated' by unconscionability.'" *Id.* at 453 (alterations in original) (quoting *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1478, 92 Cal.Rptr.3d 153, 167 (2009)); *see also Armendariz*, 24 Cal. 4th at 124 ("If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.").

Here, the parties appear to agree that the MAA's representative action waiver is invalid to the extent it applies to Plaintiff's PAGA claim.  Plaintiff does not, nor can he, argue that the asserted PAGA waiver permeates the MAA with unconscionability.  Accordingly, the Court severs the PAGA waiver pursuant to Section Q of the MAA, and grants Defendant's motion to compel arbitration of Plaintiff's wage-and-hour claims.  *See Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d at 1130 (severing PAGA waiver and compelling individual claims to arbitration).

### D.    Stay and Dismissal

The FAA provides that when the claims asserted by a party are "referable to arbitration," the Court shall "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.  Defendant requests that the Court dismiss Plaintiff's class-action claims and stay his PAGA claim pending arbitration.  (Mot. 13.)  Under the FAA, a court must "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting 9 U.S.C. § 3).  If a court "determines that all of the claims raised in the action are

subject to arbitration," the court may either "stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). "However, if a court finds that the plaintiff asserts both arbitrable and nonarbitrable claims, district courts have 'discretion whether to proceed with the nonarbitrable claims before or after the arbitration and [have] . . . authority to stay proceedings in the interest of saving time and effort for itself and litigants.'" *Jenkins v. Sterling Jewelers, Inc.*, No. 17-CV-1999-MMA-BGS, 2018 WL 922386, at *7 (S.D. Cal. Feb. 16, 2018) (quoting *Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D. Cal. 1984)).

"[T]he Ninth Circuit has suggested, without expressly holding, that a class encompassing members with valid arbitration agreements and others not subject to the arbitration agreements cannot be certified." *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2019 WL 4194195, at *17 (N.D. Cal. Sept. 4, 2019) (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)). Given this Court's decision to grant Defendant's Motion to compel arbitration of Plaintiff's wage-and-hour claims, Plaintiff cannot continue to serve as class representative of the putative class. Accordingly, the Court dismisses Plaintiff's class-wide claims. Yet the Complaint's class claims do not warrant dismissal with prejudice at this stage, *inter alia*, because Plaintiff's inadequacy as a class representative does not speak to the merits of the class claims.

Turning next to Defendant's request to hold in abeyance Plaintiff's PAGA claim, Plaintiff argues that "staying the PAGA action would produce no benefit for the proper administration of this case." (Opp'n 14.) Plaintiff's PAGA claims "are derivative in nature of [his] substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision." *Shepardson v. Adecco USA, Inc.*, No. 15-CV-05102-EMC, 2016 WL 1322994, at *6 (N.D. Cal. Apr. 5, 2016). This Court joins others in finding that where, as here, the factual and legal overlap between arbitrable wage-and-hour claims and nonarbitrable PAGA claims is considerable, courts are well-within their discretion to stay the PAGA claims pending arbitration of the individual claims, as it would serve the Court's interest in efficiency and give proper effect

both to the principles enshrined in Rule 1 of the Federal Rules of Civil Procedure and the parties' agreement to arbitrate. *See id.*; *Hermosillo v. Davey Tree Surgery Co.*, No. 18-CV-00393-LHK, 2018 WL 3417505, at *20 (N.D. Cal. July 13, 2018) (staying PAGA claim pending arbitration of individual wage and hour claims); *Whitworth*, 336 F. Supp. 3d at 1131 (same); *Castro Cardenas v. Aaron's Inc.*, No. 2:20-CV-01327-TLN-AC, 2021 WL 2355942, at *3 ("district courts in the Ninth Circuit have routinely—and recently—stayed PAGA claims" while individual claims are properly arbitrated); *Musolf v. NRC Env't Servs., Inc.*, No. 2:20-CV-01387-KJM-CKD, 2021 WL 1696282, at *3 (E.D. Cal. Apr. 29, 2021) ("Given the entanglement of the non-arbitrable PAGA claim for civil penalties with the other [wage and hour] claims for damages, including in part a portion of the PAGA claim, the court stays the entire action here in the interest of efficiency, pending completion of arbitration.").

## IV.   CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion.  Specifically, the Court severs the PAGA waiver from the MAA as discussed above; **ORDERS** the parties to proceed to arbitration with Plaintiff's individual wage-and-hour claims in the manner provided for in the MAA; **DISMISSES** Plaintiff's class-action claims without prejudice; and **STAYS** this action.  *See id.* 9 U.S.C. §§ 3–4.

The Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect.  *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing.  An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**


**DATED: October 27, 2021**

Hon. Cynthia Bashant
United States District Judge

- 21 -

20cv0064